UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICA DONADIO, *individually and on behalf of all others similarly situated,*

              Plaintiff,

              v.

BAYER HEALTHCARE LLC,

              Defendant.
_____

**DECISION AND ORDER**

6:22-CV-06521 EAW

## INTRODUCTION

Plaintiff Patricia Donadio ("Plaintiff") brings this putative class action against defendant Bayer HealthCare LLC ("Defendant"), alleging that it has deceptively marketed Alka-Setzer Plus brand nighttime "Severe Cold & Flu" mix-in powder packets. (Dkt. 17). Plaintiff alleges that the phrase "Honey Lemon Zest," accompanied by images of a lemon wedge and a honey dipper, creates the misleading impression that the medicine contains "honey and lemon ingredients beyond a de minimis amount." (Dkt. 17 at ¶ 32). Based on these allegations, Plaintiff asserts claims for: (1) violation of New York General Business Law ("GBL") §§ 349 and 350; (2) violation of "[t]he Consumer Fraud Acts" of the states of Kansas, New Mexico, Utah, Idaho, North Dakota, West Virginia, Montana, Mississippi, and Arkansas; (3) breaches of express warranty, the implied warranty of merchantability/fitness for a particular purpose, and the Magnuson Moss Warrant Act, 15 U.S.C. §§ 2301 *et seq.*; and (4) fraud. (*Id.* at ¶¶ 40, 47-67).

Defendant has moved to dismiss Plaintiff's amended complaint. (Dkt. 22). For the reasons that follow, Defendant's motion is granted.

## FACTUAL BACKGROUND

Defendant manufactures and sells Alka-Setzer Plus brand nighttime mix-in powder packets for relief of "Severe Cold & Flu" (the "Product"). (Dkt. 17 at ¶ 1). The Product comes in a package with the phrase "Honey Lemon Zest" on the front, accompanied by images of a lemon wedge and a honey dipper. (*Id.*). The front of the package also contains a list of active ingredients, in a different area, and on a different colored background. (*Id.*). The active ingredients listed on the front of the package are acetaminophen, doxylamine succinate, phenylephrine hydrochloride, and dextromethorphan hydrobromide. (*Id.*). "[T]he full active and inactive ingredient lists on the reverse side of the packaging reveal the absence of honey and any lemon ingredients." (*Id*. at ¶ 16). Plaintiff alleges that:

> Notwithstanding the front label disclosure of active ingredients, the Product's front label emphasis on honey and lemon through the wedge of fresh lemon and dripping honey dipper, described as 'Honey Lemon Zest' next to a cup of steaming tea creates an impression of value on honey and lemon greater than their true functional role in the formulation, because these are inactive ingredients and present in de minimis amounts.

(*Id*. at ¶ 13 (quotation and alteration omitted)). "Other cold and cough products that do not contain honey and lemon ingredients may contain pictures of a honey dipper and lemon wedge, but disclose on their front labels this only means they have 'Honey Lemon Flavors.'" (*Id*. at ¶ 12).

**PROCEDURAL BACKGROUND**

Plaintiff filed her original complaint on November 21, 2022. (Dkt. 1). Defendant moved to dismiss the original complaint (Dkt. 13), and the Court afforded Plaintiff an opportunity to file an amended complaint "curing the alleged defects" (Dkt. 15). Plaintiff thereafter filed the amended complaint, which is the operative pleading. (Dkt. 17). Defendant filed the instant motion seeking dismissal of the amended complaint (Dkt. 22), which Plaintiff has opposed (Dkt. 23). Briefing was completed on July 12, 2023, when Defendant filed a reply. (Dkt. 24).

**DISCUSSION**

I.    **Legal Standard—Rule 12(b)(6)**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II. Plaintiff's Claims

As noted above, Plaintiff's amended complaint contains the following claims: (1) violation of GBL §§ 349 and 350; (2) violation of "[t]he Consumer Fraud Acts" of the states of Kansas, New Mexico, Utah, Idaho, North Dakota, West Virginia, Montana, Mississippi, and Arkansas; (3) breaches of express warranty, the implied warranty of merchantability/fitness for a particular purpose, and the Magnuson Moss Warranty Act; and (4) fraud. (Dkt. 17 at ¶¶ 40, 47-67). For the reasons set forth below, the Court finds that none of these claims are plausibly alleged.

### A. GBL §§ 349 and 350 Claims

Plaintiff alleges that Defendant has violated §§ 349 and 350 of the GBL. (Dkt. 17 at ¶¶ 47-50). As another court in this Circuit has explained:

> Section 349 of the New York General Business Law declares unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Section 350 prohibits "false advertising in the conduct of any business, trade, or commerce or in the furnishing of any service." Sections 349 and 350 are both aimed at conduct

- 4 -

> that is deceptive—*i.e.*, conduct likely to mislead a reasonable consumer acting reasonably under the circumstances. The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices.

*Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (quotations, citations, and alterations omitted).

"To state a claim for false advertising or deceptive business practices under New York . . . law, a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quotation omitted). It is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer" under appropriate circumstances. *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). The reasonable consumer inquiry is an objective one, and "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Id.* at 742. "To survive a motion to dismiss, a plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022).

Defendant argues that no reasonable consumer could conclude from the packaging that the Product contains honey and lemon as ingredients beyond a de minimis amount. (Dkt. 22-3 at 16). Instead, Defendant argues, "[a] reasonable consumer interested in purchasing medicine and looking at the active ingredients on the front of the product package—acetaminophen, doxylamine succinate, phenylephrine HCl, and

- 5 -

dextromethorphan HBr—will conclude that 'Honey Lemon Zest' reflects to the medicine's flavor, not its ingredients." (*Id.*). The Court agrees.

"A reasonable consumer . . . does not lack common sense and is not assumed to be the least sophisticated consumer." *Lisa Coppola, LLC v. Higbee*, No. 1:19-CV-00678, 2020 WL 1154749, at *8 (W.D.N.Y. Mar. 10, 2020). In this case, a reasonable consumer would not understand the phrase "Honey Lemon Zest" and pictures of a lemon wedge and a honey dipper, on a visually and spatially distinct section of the package from the active ingredient list, to indicate that honey or lemon are present in the medication in non de minimis amounts. Instead, a reasonable consumer would understand that the phrase "Honey Lemon Zest"—which is not itself the name of an ingredient found in nature— refers to the flavor of the medication.

"Courts typically find misleading representations about ingredients when the product label explicitly asserts that it is made with a specific ingredient or specifies the quantity of an ingredient when the ingredient is not predominant in the Product." *Brown v. Kellogg Sales Co.*, No. 1:20-CV-7283-ALC, 2022 WL 992627, at *4 (S.D.N.Y. Mar. 31, 2022). A reasonable consumer would observe that the packaging at issue in this case does not state the Product is "made with" or "made from" honey, lemon, or lemon zest. *See, e.g., Angeles v. Nestle USA, Inc.*, 632 F. Supp. 3d 309, 315-16 (S.D.N.Y. 2022) (considering bottle of sparkling water where "the bottle includes the words 'Lemon & Lemon Zest,' drawings of 'full and cut lemons, lemon peels and leaves from the lemon plant,' and is 'in a bottle covered in yellow cellophane'" and concluding that "the label's use of the phrase 'Lemon & Lemon Zest' merely represents that the Product is lemon

flavored. The Product does not use language such as 'made with lemon,' 'made with lemon zest,' or any other similar message that would convey to a reasonable consumer that the Product includes those ingredients"); *Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 278 (S.D.N.Y. 2022) (reasonable consumer would not understand "honey graham crackers" with a picture of a honey dipper to convey that graham crackers' honey flavor was derived "mostly or exclusively from honey," in part because "the Product's packaging does not use language such as 'made with honey' or 'made with real honey,' or anything similar"); *Cruz v. D.F. Stauffer Biscuit Co.*, No. 20 CIV 2402 PGG JLC, 2022 WL 4592616, at *5 (S.D.N.Y. Sept. 29, 2022) (finding that reasonable consumer would not expect "lemon snap" cookies with a picture of a lemon on the label to be flavored predominately or exclusively from real lemons, where package did not say "made with lemons" or "made from lemons").

A reasonable consumer would further be informed by the fact that the Product's package states "Honey Lemon Zest," rather than "honey and lemon" or "honey and lemon zest." The use of "Honey Lemon Zest" as a phrase—or even title—is a clear indication that it refers to the flavor of the product, and not to individual ingredients. *See Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 82 (S.D.N.Y. 2023) (finding that the phrase "Margarita Hard Seltzer" did not misleadingly suggest that the product was "a cocktail containing tequila" because "the Product's label uses 'Margarita' as a modifier of the term 'hard seltzer'"). This is particularly so because "lemon" and "honey" are both words that "can be used and commonly understood to refer to a product's scent or flavor" rather than to "promise the inclusion of any particular ingredient." *Davis v. Pur Co. (USA), Inc.*, No. 22-

- 7 -

CV-6430L, 2023 WL 3024407, at *4 (W.D.N.Y. Apr. 20, 2023) (finding that "a reasonable consumer, acting reasonably under the circumstances, would not be misled by the Product label's use of the word 'peppermint,' into believing that the Product's flavor was derived solely from peppermint components such as peppermint oil or peppermint extract"); *see also Brown*, 2022 WL 992627, at *4 (finding that description of Pop-Tarts as "Frosted Strawberry," with a picture of a halved strawberry, was not misleading because "strawberries are a common food flavor, whether artificial or otherwise, especially in processed snack foods like Pop-Tarts."); *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 243 (S.D.N.Y. 2021) (collecting cases holding that "the word 'vanilla' on a product's front label makes a representation about the *flavor* of the product, but does not make a representation about the *source* of the product's vanilla flavor" (emphases in original)).

Additionally, as Plaintiff acknowledges in the amended complaint, the active and inactive ingredient lists on the package disclose that the Product contains "flavors," but not a more than de minimis amount of honey or lemon. (Dkt. 17 at ¶ 16). "Those interested in the actual ingredients can read the list[.]" *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020); *see also Cruz*, 2022 WL 4592616, at *8 ("[T]he front panel does not state or suggest that the Cookies are free of artificial flavor or that the Cookies' lemon flavor is derived exclusively or primarily from real lemons. The front panel of the Cookies' packaging merely lists the type of cookie—"Lemon Snaps"—and a picture of lemons. Given that the ingredients list found on the Cookies' packaging discloses that the Cookies contain 'NATURAL AND ARTIFICIAL FLAVORS,' this

Court concludes as a matter of law that the Cookies' packaging – when considered as a whole – is not materially misleading."); *Angeles*, 632 F. Supp. 3d at 316 ("[T]he ingredient list contains only 'CARBONATED MINERAL WATER' and 'NATURAL FLAVORS.' A quick look to these Nutrition Facts would thus dispel any suggestion that the Product contained 'an appreciable amount' of lemon." (citation omitted)). And while "a reasonable consumer should not be expected to consult" an ingredients list "to correct misleading information set forth in large bold type on the front of the box," *Mantikas*, 910 F.3d at 637, no such misleading information exists in this case. Instead, the front of the package accurately conveys that the Product is honey and lemon flavored. The lists of active and inactive ingredients—which mention neither lemon nor honey—provide additional information about the source of that flavoring. *See Wallace v. Wise Foods, Inc.*, No. 20-CV-6831 (JPO), 2021 WL 3163599, at *2 (S.D.N.Y. July 26, 2021) (where potato chips were labeled "cheddar & sour cream flavored" and "[t]he ingredients label . . . explain[ed] that the chips contain cheddar cheese and sour cream while informing that they contain lesser amounts of artificial flavoring," the ingredients label confirmed and did not contradict the representations on the front of the package).

     Plaintiff's arguments to the contrary are unpersuasive. Plaintiff points out that the amended complaint alleges there is growing demand among consumers for "OTC products based on 'natural ingredients,'" because consumers believe such products to be "equally, if not more effective, in treating colds and coughs." (Dkt. 1 at 15 (citing Dkt. 17 at ¶¶ 5-6, 8)). However, no reasonable consumer could believe that the Product is made from "natural ingredients." The front label makes no such claims, and discloses that the Product

contains acetaminophen, doxylamine succinate, phenylephrine hydrochloride, and dextromethorphan hydrobromide. (Dkt. 17 at ¶ 1). A reasonable consumer's desire for "natural ingredients" would not cause him or her to simply ignore this information.

Plaintiff also argues that the use of the qualifying term "flavors" by competitors would cause a reasonable consumer to conclude that the Product contained a more than de minimis amount of honey and lemon. (Dkt. 23 at 15-16; *see* Dkt. 17 at ¶ 35 ("Plaintiff viewed and/or was aware of how competitor products truthfully represented they only had 'honey lemon flavors' instead of honey and lemon ingredients.")). But in both examples provided by Plaintiff, the packaging at issue states "Green Tea & Honey Lemon Flavors." (Dkt. 17 at ¶ 12). Unlike honey and lemon, "green tea" is not commonly used or known as a description of flavor. Additionally, the fact that two competitors have chosen to include the word "flavors" on their packaging does not mean that Defendant's failure to do so is misleading. *See Brown v. Coty, Inc.*, No. 22 CIV. 2696 (AT), 2023 WL 2691581, at *5 (S.D.N.Y. Mar. 29, 2023) (use of the word "clean" by the defendant's competitors did not render the defendant's marketing misleading where the defendant did not market its products as "clean").

A reasonable consumer would also consider whether the Product—a medicinal powder—is one that would be expected to contain a more than de minimis amount of lemon (or lemon zest) and honey. *See Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (a reasonable consumer would not expect "Angus Steak & Egg Breakfast Sandwich" and "Angus Steak & Egg Wake-Up Wrap" to contain an "intact" piece of meat (as opposed to a ground beef patty) where the products were "marketed as grab-and-go products that

- 10 -

can be consumed in hand, without the need for a fork and knife"). Plaintiff has not identified a single comparable product that contains such ingredients. Notably, the examples that Plaintiff has identified of "[c]ompetitor brands of cough and cold medications" that "contain honey and lemon ingredients" are all liquid cough syrups. (Dkt. 17 at ¶ 11). Further, the packages of these cough syrups contain phrases such as "taste the real honey," "naturally drug free," and "with honey." (*Id.*).

Finally, Plaintiff is simply incorrect that the Court must accept her "'Honey Lemon' allegations as true" at this stage of the proceedings. (Dkt. 23 at 13). While the Court is obliged to accept Plaintiff's well-pleaded factual allegations as true, it is not required to accept her conclusory allegations about how a reasonable consumer would view the Product's packaging. *See Chen*, 954 F.3d at 501; *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021).

For all these reasons, the Court agrees with Defendant that Plaintiff's GBL claims are not plausibly alleged and must be dismissed. The Court need not and does not reach Defendant's alternative argument that Plaintiff's GBL claims are preempted by the Food, Drug, and Cosmetic Act. (Dkt. 22-23 at 20-22); *see* 21 U.S.C. § 379r (with respect to nonprescription drugs, "no State or political subdivision of a State may establish or continue in effect any requirement . . . that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter, the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 et seq.), or the Fair Packaging and Labeling Act (15 U.S.C. 1451 et seq.)"); *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (declining to determine "whether federal law preempts the state-law claims asserted here"

because the plaintiffs "failed plausibly to allege that the 'diet' label [on the defendant's soft drink products was] misleading").

### B. Multi-State Consumer Fraud Act Claim

Plaintiff's second claim states: "The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce." (Dkt. 17 at ¶ 51). Setting aside the patent inadequacy of this allegation, which fails even to identify the specific laws at issue, the Court has determined for the reasons discussed above that Plaintiff has not plausibly alleged an unfair or deceptive business practice by Defendant. Her second claim thus also fails.

### C. Breaches of Express Warranty, Implied Warranty of Merchantability, and Magnuson Moss Warranty Act

The third claim in the amended complaint is for breaches of express warranty, the implied warranty of merchantability/fitness for a particular purpose, and the Magnuson Moss Warranty Act. (Dkt. 17 at ¶¶ 54-66). This claim is based on Plaintiff's assertion that Defendant "expressly and impliedly warranted to Plaintiff that [the Product] contained honey and lemon ingredients beyond a de minimis amount." (*Id*. at ¶ 54).

To plead a breach of express warranty claim under New York law, a plaintiff must allege "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (citations omitted).

Plaintiff's claim for breach of express warranty fails because she has not "adequately pled that the Product does not comport with the statements contained on the label." *Dashnau*, 529 F. Supp. 3d at 249 (quotation omitted). In particular, and as discussed above, the label does not state that the Product contains honey or lemon ingredients beyond a de minimis amount.

"A breach of the implied warranty of merchantability occurs when the product at issue is unfit for the ordinary purposes for which such goods are used." *Id*. (citation omitted). The Product is a medication for treating cold and flu symptoms, and Plaintiff has made no allegations whatsoever that it was unfit for that purpose. Additionally, "[t]o the extent the [amended complaint] alleges that the Product does not conform to any promise or affirmation of fact made on its label, [Plaintiff's] claim fails for the same reason as [her] express warranty claim." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167 (S.D.N.Y. 2021).

Plaintiff also does not have a viable claim under the Magnuson Moss Warranty Act. "To state a claim under the [Magnuson Moss Warranty Act], plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015); *see also Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) ("[T]he MMWA merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." (internal quotation marks omitted)). The failure of Plaintiff's state-law breach of warranty claims is equally fatal to her Magnuson Moss Warranty Act claim.

### D.  Fraud Claim

Plaintiff's final claim is for fraud. (Dkt. 17 at ¶ 67). Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To state a claim for common law fraud under New York law, a plaintiff must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Haggerty v. Ciarelli & Dempsey*, 374 F. App'x 92, 94 (2d Cir. 2010). "[C]ommon law fraud claims are subject to the particularity requirements of Rule 9(b)." *Filler v. Hanvit Bank,* 156 F. App'x 413, 416 (2d Cir. 2005).

Plaintiff's fraud claim fails for essentially the same reason as her other claims—she has not plausibly alleged that she reasonably relied on a material misrepresentation by Defendant. *See, e.g., Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199 (E.D.N.Y. 2018) ("For essentially the same reasons discussed regarding the material representation prong for the statutory claims, Plaintiff fails to plead reasonable reliance."); *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 192 (S.D.N.Y. 2016) ("But, for the same reasons that the § 349 claim fails, the fraud claim fails[.]").

### III.  Leave to Amend

The final sentence of Plaintiff's opposition to Defendant's motion to dismiss states: "For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative grant leave to file a Second Amended Complaint." (Dkt. 23 at 25). This "is not a proper

motion for leave to amend, and fails to comply with the Local Rules of Civil Procedure with respect to the process for seeking to amend a pleading." *Wi3, Inc. v. Actiontec Elecs., Inc.*, 71 F. Supp. 3d 358, 363 (W.D.N.Y. 2014).  Moreover, Plaintiff has already had a chance to amend, and has failed to remedy the defects identified by Defendant.  The Court accordingly denies this "cursory or boilerplate request[] . . ., made solely in a memorandum in opposition to a motion to dismiss." *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009).

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss.  (Dkt. 22).  The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

                                                                                _____
                                                                                ELIZABETH A. WOLFORD
                                                                                Chief Judge
                                                                                United States District Court

Dated: March 18, 2024
           Rochester, New York